# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RICHARD F. BALDWIN and | § | |
| CORPORACION EL MOSCARDON, S.A. | § | |
| | § | Civil Action No.  4:20-cv-639 |
| v. | § | Judge Mazzant |
| | § | |
| SILVIO LACAYO BEECHE, et al. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Compel Arbitration (Dkt. # 15).  Having

considered the briefing, the Court finds the motion should be **GRANTED**.

## BACKGROUND

In June 2019, Plaintiffs Richard F. Baldwin and Corporación El Moscardón executed a

settlement agreement ("Settlement Agreement") with Defendants Silvio Lacayo Beeche, Mauricio

Lacayo Beeche, Manfred Lacayo Beeche, Financiera Desyfin, S.A., Inversiones Básicas, S.A.,

Inversiones Activas Siglo XXI, S.A., Asesorías Capitalistas Fresh, S.A., and Sociedad

Administradora de Acciones Cosí, S.A., relating to a case that Plaintiffs filed in the United States

District Court for the Eastern District of Texas (Dkt. # 15 at p. 8 (Case number 1:18-cv-602)).

Relevantly, the Settlement Agreement stated:

> Through this Agreement, and the documents and contracts to be established, all the
> aforementioned differences and disputes are finally resolved, as well as any other
> difference, controversy, claim, action (civil, criminal or otherwise), or
> disagreement, which might exist . . . and the referenced legal action will be
> withdrawn, abandoned or desisted and/or any other related or ancillary
> investigative or legal action.

(Dkt. #15, Exhibit 2 at p. 4).  In exchange for settling, Plaintiffs received $3,000,000 of stock

shares from Defendants (Dkt. #15 at p. 4–5).  To carry out that transaction, the parties signed a

detailed trust agreement ("Trust Agreement").    Relevantly, the Trust Agreement mandated arbitration:

> In case of differences, conflicts, or disputes related to the execution, breach, interpretation or any other aspect derived from this contract, including the need to fill gaps or clarify doubts as to the scope of this agreement in order to avoid the procedure of voluntary jurisdiction, the parties . . . expressly waive in this act the ordinary jurisdiction and agree to resolve the conflict according to the following procedure: The matter or controversy shall be resolved by Arbitration with final and unappeasable judgment in accordance with the Rules of Conciliation and Arbitration of the Center of Conciliation and Arbitration of the Costa Rican Chamber of Commerce . . .

(Dkt. # 15, Exhibit 1 at p. 15).  The parties agreed the Trust Agreement was valid and enforceable, and  they understood its legal and practical consequences (Dkt. # 15, Exhibit 1 at p. 17).

Plaintiffs sued Defendants for breaching the Settlement and Trust Agreement (Dkt. # 1, ¶ 31).  Plaintiffs alleged contract-related claims, including (1) breach of contract, (2) conspiracy, and (3) fraudulent inducement (Dkt. #1, ¶¶ 57–70).

On November 20, 2020, Defendants filed the Motion to Compel Arbitration, or in the Alternative, to Dismiss for Forum Non Conveniens (Dkt. #15).  On January 15, 2021, Plaintiffs responded (Dkt. #25).  On January 25, 2021, Defendants replied (Dkt. #26).  On February 1, 2021, Plaintiffs filed their Sur-Reply (Dkt. #27).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA was designed to overrule the judiciary's long-standing refusal

to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up).  The FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).  The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478.  Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).  The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).  "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018).  To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement.  *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."  *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement.  *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration.  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## ANALYSIS

Defendants request the Court dismiss the case and mandate arbitration because the Trust Agreement calls for arbitration in Costa Rica.  Applying the two-step framework for motions to compel arbitration, the Court finds (1) there is a valid arbitration agreement and (2) Plaintiffs' claims are covered by it.

## I.      There is a Valid Agreement to Arbitrate

State law principles guide whether a valid agreement to arbitrate exists.  *See Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 209 (5th Cir. 2019); *Graves*, 568 F.3d at 222.  The parties dispute whether Georgia or Texas law applies, but the relevant analysis is the same.[1]

The parties signed a clearly worded arbitration agreement, and they stated the agreement reflected the parties' intent. (Dkt. # 15, Exhibit 1 at pp. 15, 17–19). Therefore, a valid arbitration agreement presumptively exists.  *See Hamed v. Fry's Elecs., Inc.*, 4:17-CV-00675, 2017 WL 6325611, at *3 (E.D. Tex. Dec. 11, 2017) (applying Texas law); *Bruce v. PharmaCentra, LLC*, CIV.A.1:07CV3053TWT, 2008 WL 1902090, at *5 (N.D. Ga. Apr. 25, 2008) (applying Georgia law).

Plaintiffs nevertheless argue the arbitration agreement is invalid because (1) Defendants fraudulently induced them to sign the Settlement and Trust Agreements, (2) Plaintiffs believed they were arbitrating in a different forum, and (3) arbitrating in Costa Rica would be unfair. However, for the reasons explained below, these arguments do not overcome a presumptively valid arbitration agreement.

### 1. *Fraudulent Inducement*

The Court first addresses whether fraudulent inducement invalidates the arbitration agreement.  Plaintiffs' fraudulent inducement claim targets the Settlement Agreement and Trust Agreement's execution—not the arbitration clause itself.  Consequently, the Court finds the arbitration process controls this claim.

---

[1] Defendants reference Texas contract law in their Motion to Compel Arbitration (Dkt. # 15 at pp. 14–15, 18). Meanwhile, Plaintiffs argue Georgia law applies because the documents were signed in Atlanta (Dkt. #25 at pp. 9–10).

Even if a party challenges a contract as a whole, an arbitration agreement may be severed and enforced independently. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citing *Rent-A-Center, W.*, *Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). As a result, a party can claim an arbitration agreement involved fraudulent inducement in two ways. One way challenges the arbitration agreement specifically, while the other challenges the contract as a whole. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

The first line of challenges is for the court. *See id.* But fraudulent inducement allegations to the entire contract are for the arbitrator, assuming the parties agreed arbitration would decide this issue. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Dr. Eric J. Hall, Jr., DDS, PA v. Affordable Care, LLC*, No. 4:19-CV-00335, 2019 WL 5550625, at *3 (E.D. Tex. Oct. 28, 2019). Therefore, the Court must decide if Plaintiffs' fraudulent inducement claim comes within the arbitration clause. *Affordable Care, LLC*, 2019 WL 5550625, at *3.

The Court finds that it does. The Trust Agreement states arbitration will decide all "differences, conflicts, or disputes related to the execution, breach, interpretation or any other aspect derived from this contract . . ." (Dkt. # 15, Exhibit 1 at p. 15). Plaintiffs claim Defendants made material misrepresentations to entice settlement (Dkt. #24 at pp. 2–3). This claim is a "dispute related to the execution" of the Trust Agreement because it goes to the validity of the underlying contract. Because the arbitration clause encompasses claims regarding the Trust Agreement's execution, the arbitration clause applies.

Plaintiffs argue the arbitration clause is invalid because the entire contract was fraudulently induced (Dkt. # 25 at pp. 2–3). However, the arbitration clause is still valid  despite these underlying claims. *See Buckeye Check Cashing, Inc*., 546 U.S. at 444. Once the Court finds an arbitration provision covers fraudulent claims to the entire contract, the FAA requires the arbitrator

decide this dispute.  *See Prima Paint Corp.*, 388 U.S. at 404.  Because Plaintiffs' fraudulent inducement allegations do not target the arbitration clause specifically, the Court rejects it as a reason to avoid arbitration.

### 2.  *Arbitration Forum & Mutual Assent*

Plaintiffs argue the arbitration clause itself is invalid because they believed arbitration would be in the International Chamber of Commerce—not with domestic arbitrators in Costa Rica (Dkt. #1, ¶¶ 104–08); (Dkt. #25, Exhibit 1, ¶¶ 9–10).  This argument is unpersuasive because Plaintiffs had ample opportunity to review the contract, which plainly states arbitration would occur in Costa Rica.

Plaintiffs essentially argue they lacked mutual assent to the arbitration forum.  Although Plaintiffs argue they did not know domestic arbitration would occur, the Trust Agreement unmistakably refers to domestic arbitration in Costa Rica (Dkt. # 15, Ex. 2 at pp. 15–16).  There is no evidence that Plaintiffs lacked the time to read this provision or understand where arbitration should take place.  Nor did Plaintiffs seek clarification on this point during negotiations.  Instead, Plaintiffs expressly stated they understood the clause's terms, and they are therefore presumed to have read them.  *In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986) ("Under elementary principles of contract law, one is presumed to have read a contract that one signs.").

Plaintiffs' lack of diligence does not void the arbitration agreement.  The contract's language is unambiguous on where arbitration would take place, and Plaintiffs nevertheless agreed.  Georgia, Texas, and federal law preclude Plaintiffs' argument on validity.  *See In re Int'l Bank of Com.*, No. 13-07-693-CV, 2008 WL 192260, at *17 (Tex. App.—Corpus Christi–Edinburg Jan. 18, 2008, pet. struck); *Extremity Healthcare, Inc. v. Access To Care Am., LLC*, 793 S.E.2d 529, 534–35 (Ga. Ct. App. 2016); *Bruckner Truck Sales, Inc.*, 2020 WL 6799179, at *9

(concluding a party did not meet its "heavy burden" under federal law to show forum-selection clause was unreasonable).

Having found an otherwise valid arbitration agreement, Plaintiffs' argument is unpersuasive.

### 3.  *Arbitration Forum*

Finally, Plaintiffs imply the agreement is invalid because arbitrating in Costa Rica may deprive them of a fair tribunal (Dkt. # 25 at p. 9).  This question goes to a forum-selection clause's enforceability.  *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela*, 575 F.3d 491, 502–03 (5th Cir. 2009).

"Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases."  *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007).  A forum-selection clause is enforceable unless a party shows enforcement is unreasonable.  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004).  The Fifth Circuit has stated that unreasonableness can be shown by proving:

> the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997).

Plaintiffs fail to overcome the heavy burden of showing that a Costa Rica forum will deprive them of their day in court.  Plaintiffs allege Costa Rican arbitration could be biased because of Defendants' extensive business ties there.  But these general allegations—without any specific detail—are insufficient given the FAA's general preference for arbitration.  *See In re Online Travel Co.*, 953 F. Supp. 2d 713, 723 (N.D. Tex. 2013) (citing *Armstrong v. Associates International*

8

*Holding Corp.,* 242 Fed. Appx. 955, 959 (5th Cir. 2007)).  Plaintiffs provide no other reason for why Costa Rican arbitration presents unique difficulties, and conjecture on potential biases cannot be enough to render an arbitration venue unreasonable.  *See id.*  Otherwise, any allegation of bias against a tribunal would be sufficient.

Still, the Court notes that Plaintiffs engaged in extensive settlement talks with Defendants and were aware of Defendants' presence in Costa Rica during negotiations.  Plaintiffs also recently filed a criminal action against Defendants in Costa Rica, suggesting that Plaintiffs do not believe that there is a "grave inconvenience or unfairness" by litigating in Costa Rica (*See* Dkt. # 25 at p. 3).  For these reasons, the Court finds the arbitration clause is valid.

### II.      Plaintiffs' Claims Are Covered by the Arbitration Agreement

Next, the Court must decide if Plaintiffs' claims fall within the arbitration agreement.  *IQ Prods.*, 871 F.3d at 348.  Plaintiffs' claims include breach of the Trust Agreement, fraudulent inducement to sign the Trust Agreement, and the underlying causes of action in the Settlement Agreement (Dkt. # 1, ¶¶ 57–86).[2]  Because the arbitration agreement contains a delegation clause on the agreement's scope, the arbitrator must decide whether Plaintiffs' claims come under the agreement.  *See Kubala*, 830 F.3d at 203.

The arbitration clause mandates arbitration of disputes "related to the execution, breach, interpretation or any other aspect derived from this contract, *including the need to fill gaps or clarify doubts as to the scope of this agreement* in order to avoid the procedure of voluntary arbitration . . ." (Dkt. #15, Exhibit 1 at p. 15 (emphasis added)).  The parties explicitly agreed that an arbitrator would "clarify doubts as to the scope of the agreement," which is the exact issue

---

[2] Specifically, Plaintiffs sue for (1) breach of contract, (2) conspiracy, and (3) fraudulent inducement, as well as statutory claims under (4) RICO, (5) the Computer Fraud and Abuse Act, and (6) the Stored Communications Act (Dkt. # 1, ¶¶ 57–86).

Plaintiffs raise here.  By delegating the scope issue to arbitration, the court cannot decide whether

Plaintiffs' claims fall under the agreement.   *See Alonzo v. Harden Home Health, LLC*, 1:18-CV-

694-RP, 2018 WL 6262959, at \*4 (W.D. Tex. Nov. 13, 2018); *Gay v. Manchester Mgmt., LLC*,

No. 3:18-CV-1378-D, 2018 WL 5255267, at \*5 (N.D. Tex. Oct. 22, 2018). That is a question for

the arbitrator.  *See Gay*, 2018 WL 5255267, at \*5.

### III.     Discovery Requests Are Denied

Lastly, the Court denies Plaintiffs' request for discovery on the arbitration agreement's

formation and any ties Defendants may have to Costa Rican arbitrators.  The Court found that

Plaintiffs agreed to the arbitration clause, and thus the arbitrator must determine the question of

fraudulent inducement.  *See In re Online Travel Co.*, No. 3:12-CV-3515-B, 2013 WL 12123302,

at \*4 (N.D. Tex. Apr. 24, 2013) (denying request to conduct discovery on contract formation

because it would not help the court decide the motion to compel arbitration).

The Court also denies Plaintiffs' request to discover if Costa Rica is a fair forum. The Fifth

Circuit does not require such discovery.  *See Armstrong*, 242 Fed. App'x at 959; *In re Online

Travel Co.*, 2013 WL 12123302, at \*5.  Besides general assertions of bias, Plaintiffs do not explain

why Costa Rica would be an unfair forum.  An arbitration venue is not simply inadequate because

a company has extensive ties to the area. *See In re Online Travel Co.*, 2013 WL 12123302, at \*5.

Consequently, the Court denies this request.

### IV.     Dismissal of Claims

The Court finds that all of Plaintiffs' claims should be arbitrated given the Settlement

Agreement and Trust Agreement's plain language.   As a result, the Court dismisses  Plaintiffs'

complaint pursuant to Rule 12(b)(3).  *Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 (5th Cir.

2019); *Bayco Prod., Inc. v. ProTorch Co., Inc.*, No. 4:19-CV-00648-ALM, 2020 WL 2574626, at

\*12 (E.D. Tex. May 21, 2020).

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Compel Arbitration (Dkt. #15) is

hereby **GRANTED**.

The entirety of Plaintiffs' claims against Defendants' are hereby **DISMISSED**

**WITHOUT PREJUDICE**.

All relief not previously granted is hereby **DENIED.**

The Clerk is directed to close this civil action.

**IT IS SO ORDERED.**

 **SIGNED this 12th day of April, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

11